UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MARK LYNCH,                          :    (05 Civ. 3669) (LMM)
                    Petitioner       :    (02 Cr. 278 (LMM))

        - v -                        :    MEMORANDUM AND ORDER

UNITED STATES OF AMERICA,            :

                    Respondent.      :

------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/21/06

McKENNA, D.J.

1.

The above defendant pleaded guilty on February 3, 2003, to a four-count superseding indictment charging him with: (Count One) distributing and possessing with intent to distribute approximately 2.7 grams of "crack" cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); (Count Two) possessing a firearm which had been shipped in interstate commerce afer having been convicted of a crime punishable by imprisonment for a term exceeding one year and having had three previous convictions for serious drug offenses, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); (Count Three) possessing and receiving a firearm which had been shipped in interstate commerce and which had had the manufacturer's serial number removed, obliterated, and altered, in violation of 18 U.S.C. § 922(k); and (Count Four) while an alien illegally in the United States, possessing, in and affecting

COPIES MAILED TO COUNSEL APR 20 2006

commerce, a firearm which had been shipped in interstate commerce, in violation of 18 U.S.C. § 922(g)(5).

The guilty plea was entered pursuant to a written plea agreement which included a United States Sentencing Guidelines stipulation calculating an offense level of 31, and a criminal history category of VI (20 points), recognizing that petitioner was subject to an enhanced sentence under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, and agreeing that the correct sentence range was 188 to 235 months of incarceration. The plea agreement also provided that it was

> agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range of 188 to 235 months' imprisonment set forth above and (ii) that the Government will not appeal any sentence within or above the Stipulated Sentencing Guidelines Range of 188 to 235 months' imprisonment.

(Gov't Letter Mem., Ex. A, at A-21.)

Petitioner was sentenced on May 21, 2003. At sentencing, but before sentence was imposed, petitioner asked if he could have pleaded guilty without a plea agreement. The government pointed out that, had he done so, petitioner would have been subject to a mandatory minimum sentence of 180 months, and that, in formulating the plea agreement, the government decided not to include a charge under 18 U.S.C. § 924(c), which would have added to the mandatory

minimum of 180 months an additional mandatory consecutive 60 months. (Gov't Letter Mem., Ex. A, at A-56 -- A-59.)

Defendant (personally) filed a notice of appeal, his counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), and on February 27, 2004, the Court of Appeals dismissed the appeal on motion of the government.

Petitioner now seeks an order, pursuant to 28 U.S.C. § 2255, vacating or setting aside his sentence.

As the government points out, the 15 grounds for relief set forth in the petition fall into four groups: (i) Grounds 1 and 2 respectively assert claims that petitioner was improperly prosecuted in the Eastern District of New York for a crime committed in the Southern District of New York, and that the issuance of a warrant for his arrest was delayed in violation of his speedy trial rights; (ii) Grounds 3 through 8 challenge the search of an apartment in which incriminating evidence was found; (iii) Grounds 9 through 14 dispute the voluntariness of his guilty plea; and (iv) Ground 15 claims ineffective assistance of counsel. (Gov't Letter Mem. at 8-9.)

**2.**

The Court considers first the third group, relating to petitioner's guilty plea.

Petitioner pleaded guilty, pursuant to a written plea agreement, on February 3, 2003. (Gov't Letter Mem., Ex. A, at A-24

3

-- A-47.) At the plea proceeding, the Court summarized the Guidelines stipulation and the waiver of the right to challenge a sentence of 235 months or less by appeal or under 28 U.S.C. § 2255 or 2241. (Id. at A-25 -- A-26.) Petitioner (under oath) stated that his lawyer had read the plea agreement to him, and, although he said he "didn't get a chance to read it word-for-word," declined the Court's offer to give him more time to read "the whole thing." (Id. at A-27.) Petitioner answered the Court's question "Does the plea agreement correctly state your agreement with the government?" in the affirmative. (Id. at A-28.) He answered the Court's question "Has anybody forced you to plead guilty or attempted to force you to plead guilty?" in the negative. (Id.)

During questioning of petitioner by the Court, petitioner changed or modified answers several times after off the record consultation with his counsel. In relation to Count One, petitioner admitted to possession of 22 dime bags of "crack" cocaine. When asked whether he was planning to give or sell the "crack" cocaine to someone else, petitioner answered first "That was for my own purpose and use your Honor" (id. at A-38), but then, after consultation initiated by his counsel, answered that he was going to "[u]se some and give away some . . . [t]o other people." (Id. at A-38 -- A-39.) In relation to Counts Two, Three and Four, when the Court asked whether, on or about the relevant date, petitioner had in his "possession" the weapon referred to in those

counts, he answered that it was in his cousin's apartment at the time of his arrest there, but, in response to the Court's question "Was it in a place where you could have gotten to it if you wanted it?" petitioner responded "No, your Honor, I didn't know it was there." (Id. at A-39.)[1] Then, after consultation initiated by his counsel, he stated, in response to the same question, "I guess I could search and find it," and acknowledged that he "knew it was in that apartment" and that he "had access to [his] cousin's apartment." (Id. at A-39 -- A-40.) In addition, at the request of the government, the Court asked petitioner "Well, did you have control over this firearm, Mr. Lynch, in the sense that you could have taken it if you wanted to?" to which petitioner answered in the affirmative. (Id. at A-41.) In response to a further request by the government, the Court elicited petitioner's acknowledgment that the serial number of the firearm had been obliterated. (Id. at A-42.)

After the government had advised the Court that it would be able to prove all of the elements of the offenses charged, including, by expert testimony, that the firearm had traveled in interstate commerce (id. at A-43 -- A-44), the Court accepted petitioner's guilty plea. The Court found that "Mr. Lynch is fully competent and capable of entering an informed plea and that his

---

[1] Counts Two, Three and Four all refer to the same firearm, a .380 auto caliber Baikal pistol, Model IZH-70. "Bryco" at page A-39 of the plea transcript appears to be a mistranscription of "Baikal."

plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the four offenses charged. . . ." (Id. at A-45.)

Petitioner challenges the validity of his guilty plea on several interrelated grounds. First, he argues that there was no evidence that he constructively possessed or lived in the apartment in which he was arrested or that he handled or even knew of the firearm and drugs found there. (Grounds 9-11.) In addition, he claims that his counsel coached or coerced him to claim that he had knowledge of the drugs and firearm found at the apartment at which he was arrested. (Grounds 11-13.) He also claims that, after the government produced the plea agreement two days before trial was scheduled to begin, his counsel told him that the prosecutor was going to make sure that petitioner would receive a life sentence if he went to trial. Petitioner argues that his plea was not voluntary as a result of this subliminal threat. (Ground 14.)

The Supreme Court, speaking of plea hearings, has said that:

> the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (citations omitted). However, there is no "*per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." Id. at 75 (footnote omitted).

A plea of guilty "is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing Brady v. United States, 397 U.S. 742, 750 (1970)). The present petition does not show such circumstances.

The petition does include denials of knowledge of contraband in an apartment in which (whether he lived there or not) petitioner was present, but those denials are contradicted by his sworn statements during the plea hearing. At a plea hearing, the court "'may rely on [the] defendant's own admissions, information from the government, or other information appropriate to the specific case.' A court need not find that a jury would return a verdict of guilty, or even that it is more likely than not that the defendant is guilty." United States v. McFadden, 238 F.3d 198, 200 (2d Cir. 2001) (quoting United States v. Andrades, 169 F.3d 131,

7

136 (2d Cir. 1999)) (other citation omitted). In other words, petitioner's admissions together with the government's representations as to what it could prove in the event of a trial are a fully sufficient basis for petitioner's plea, and no other investigation of underlying facts was or is called for.

It is true that petitioner's counsel at times intervened, apparently to advise petitioner as to what he needed to admit for the plea to be valid, but that is not only not unusual but in no way indicates that counsel was advising or coercing defendant to be anything but truthful.

"Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea." United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001) (citations omitted).

The Court remains of the view that petitioner's guilty plea was voluntary, and is valid, and does not find in the record a sufficient basis for a finding that a hearing on the voluntariness of the plea is required.

### 3.

The first group of grounds for the petition are not cognizable because, in his plea agreement, petitioner waived the right to challenge the sentence that was imposed. Such waivers are enforceable, United States v. Maher, 108 F.3d 1513, 1531 (2d Cir.

1997), and the Court does not perceive any reason why defendant's waiver should not be enforced.

In any event, petitioner's arguments are without merit. As to Ground 1, the Eastern District of New York charge which petitioner argues was improperly brought in that district was, in fact, dismissed without prejudice and then charged in this district. Nor was there any speedy trial violation in relation to the Southern District of New York charge, which was based on substantially the same conduct as the Eastern District charge that was dismissed. The issues relating to the cases brought in both districts and the underlying facts are described in this Court's Memorandum and Order of June 24, 2002 (Gov't Letter Mem., Ex. B), which is incorporated herein.

**4.**

The second group of grounds for the petition (which, in essence, all relate to the search of the apartment in which petitioner was arrested and in which the firearm and drugs were found) is also not cognizable because of the waiver contained in the plea agreement. See Section 3 hereof, supra.

These claims are also waived, independently of the plea agreement, because defendant pleaded guilty. United States v. Arango, 966 F.2d 64, 66 (2d Cir. 1992).[2]

---

[2] It is worth adding that, prior to his plea, petitioner chose not to proceed with a suppression motion that his then counsel was prepared to make. (See Gov't Letter Mem., Exs. G & H.)

5.

Finally, petitioner asserts that he received ineffective assistance of counsel. (Ground 15.) His counsel, he claims, "never adversarially tested the prosecution's case at all." (Pet. 5A-15.) His counsel also "assisted the prosecution in making sure the defendant said the right things in the correct context to ensure a valid conviction pursuant to Rule 11." (Id.)

Petitioner, on his ineffective assistance of counsel claim, "must show that his attorney's performance 'fell below an objective standard of reasonableness,' and . . . that there is a 'reasonable probability' that but for counsel's error, the outcome would have been different." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Petitioner has not made either of these showings.

To "adversarially" test the government's case has as its principal meaning to go to trial. Petitioner, however, exercised the right to plead guilty, and thus received a more lenient sentence than would have been the case had he been convicted after trial.[3] As noted above, petitioner's conferences with counsel during the plea hearing are fully consistent with the not

---

[3] Petitioner does not claim that his counsel did not examine the government's discovery and argue for the most beneficial plea agreement possible, which may also be considered an "adversarial" process.

10

infrequent situation where counsel needs to explain to a defendant what must be admitted for a valid plea.

6.

For the reasons set forth above, the petition is denied and dismissed.

The Court certifies pursuant to 28 U.S.C. § 2253 that -- as to the issues only (a) whether petitioner's guilty plea was voluntary and (b) whether the petition as to that issue may be denied and dismissed without a hearing -- petitioner has made a substantial showing of the denial of a constitutional right.

SO ORDERED.

Dated: April 20, 2006

_____
Lawrence M. McKenna
U.S.D.J.